UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAVELIN GLOBAL COMMODITIES (UK) LTD. *Plaintiff* <br><br> VERSUS <br><br> XCOAL ENERGY & RESOURCES *Defendant, and* <br><br> PNC Bank N.A., *Garnishee* | CIVIL ACTION NO. 3:25-cv-1859 <br><br> IN ADMIRALTY, F.R.C.P. 9(h) AND RULE B |

**VERIFIED COMPLAINT FOR RULE B**
**MARITIME ATTACHMENT AND GARNISHMENT**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Javelin Global Commodities (UK) Ltd. ("Javelin") who files this Verified Complaint against Defendant, Xcoal Energy & Resources ("Xcoal") asserting admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims, and requesting the issue of a writ of maritime attachment and garnishment for property of Xcoal which is in this District, including accounts, funds, monies, and deposits located in the possession of Garnishee, PNC Bank N.A. ("PNC"), and respectfully represents as follows:

**JURISDICTION, VENUE, AND THE PARTIES**

1. Jurisdiction is proper within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333, and under Rule 9(h) of the Federal Rules of Civil Procedure. Furthermore, this action is brought *quasi in rem* against Xcoal in accordance with Rule B of the Supplemental Rules

for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure for maritime attachment and garnishment of property of Xcoal located in or soon to be in this District.

2.  Venue is proper in this District because the Garnishee, PNC holds, or during the pendency of this action will hold, accounts, funds, monies, and deposits on behalf of Xcoal in this District. As shown more fully below, Defendant, XCoal, cannot be found in this District within the meaning of Rule B(1) and has no appointed agent for service of process in this District.

3.  Javelin is a private limited company formed under the laws of England and Wales with its principal place of business in London, England.

4.  Xcoal is a limited partnership with its principal place of business located at One Energy Place, Suite 900, Latrobe, Pennsylvania 15650.

5.  Upon information and belief, Garnishee, PNC Bank, N.A. ("PNC") is a national banking association formed under the laws of the United States with places of business in this District. PNC may be served via its registered agent for service of process: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## FACTUAL AND PROCEDURAL BACKGROUND

6.  This claims involves security for claims against Xcoal arising out of the wrongful seizure and attachment of a cargo of coal by Xcoal while aboard a vessel chartered by Javelin.

7.  At all material times, Javelin time chartered the M/V BULK DESTINY, IMO No. 9781994, an oceangoing bulk carrier vessel, from Pangaea Logistics Solutions (BVI), Ltd. ("Pangaea") for the carriage of cargo onboard the vessel in exchange for the payment of freight and other operating expenses.

8. In return for the payment of freight and certain expenses, Javelin obtained the exclusive right to load and ship cargo aboard the BULK DESTINY from the period of September 21, 2023 to September 30, 2023.

9. On or about September 22, 2023, the BULK DESTINY arrived at the Alabama State Docks McDuffie Coal Terminal in Mobile, Alabama to load a cargo of coal ("the Cargo").

10. Javelin owned this Cargo and had contracted to sell it to Acciaierie D'Italia S.P.A. ("ADI").

11. Specifically, on September 6, 2023, Javelin and ADI entered into a Master Coal Purchase and Sale Agreement ("Master Agreement"). The Master Agreement provided a framework agreement for the parties and dictated that Javelin and ADI may enter into transactions that would be documents under confirmations. As for the Cargo in question, Javelin and ADI executed a Purchase and Sale Confirmation No. AIE23(TS)001 ("Confirmation") for approximately 50,000 metric tons of coal. With respect to transfer of title, the Confirmation clearly stated that title to the Cargo would pass once the prepayment and provisional payment had been received in full.

12. As of September 22, 2023, ADI had not made payment under the Confirmation and, as such, title of the Cargo had not passed to ADI and would not pass to ADI until the BULK DESTINY had set sail for the port of discharge.

13. Considering the foregoing, at all material times, Javelin was the rightful owner of the Cargo.

14. On September 22, 2023, Defendant, Xcoal filed a verified complaint in the U.S. District Court for the Southern District of Alabama ("Alabama Proceeding") against ADI seeking damages and issuance of a writ of maritime attachment and garnishment pursuant to Rule B of the

Supplemental Rules for Certain Admiralty and Maritime Claims, Cause No. 1:23-cv-00361. Xcoal and ADI had an ongoing dispute in a pending arbitration which served as the basis for this attachment.

15. In the Alabama Proceeding, Xcoal sought to attach the Cargo aboard the BULK DESTINY, while the BULK DESTINY berthed at a dock in Mobile, Alabama. Xcoal sought to attach the Cargo to serve as security in the pending arbitration between Xcoal and ADI.

16. Based upon verified allegations contained in Xcoal's complaint, the Southern District of Alabama issued an Order for Writ of Attachment and Garnishment of the Cargo and on September 22, 2023, Lott Ship Agency, Inc., acting on behalf of the U.S. Marshal Service, wrongfully seized the Cargo while aboard the BULK DESTINY.

17. Pursuant to the time charter by and between Javelin and Pangaea, Javelin owed demurrage at the loading port at a rate of $23,000 per day or *pro rata*. As a result of Xcoal's wrongful seizure and attachment of the Cargo owned by Javelin, Javelin incurred demurrage charges totaling $430,259.72.

18. Following this wrongful seizure and attachment, Javelin moved to vacate the attachment on an emergency basis. On October 5, 2023, the Southern District of Alabama vacated the attachment on the basis that Xcoal failed to establish the existence of a maritime contract and that the property subject to the attachment belonged to ADI.

19. On November 11, 2023, Javelin filed a complaint against Xcoal in the Southern District of Alabama alleging damages for wrongful attachment and for intentional and tortious interference with Javelin's contractual relationships with ADI and Pangaea, Cause No. 1:23-cv-00444) (hereinafter "Wrongful Attachment Proceeding"). In the Wrongful Attachment

Proceeding, Javelin seeks damages incurred by Javelin, including demurrage, costs and expenses for the keeping of attached property, as well as attorneys' fees, costs, and interest.

19. Javelin also has pending a Counterclaim seeking the same damages in Cause No. 1:23-cv-00361. These matters have been consolidated.

20. In the Alabama Proceeding, Javelin claims damages incurred as a result of the daily losses Javelin suffered from the wrongful seizure of its cargo and the arrest of the M/V BULK DESTINY. Javelin suffered damages in the amount of $430,259.72, and legal interest in the amount of $39,675.96, for a total amount of $469,935.68.

21. Javelin further contends that Xcoal's seizure and attachment of Javelin's Cargo constitutes a wrongful attachment under General Maritime Law, and, as such Javelin is entitled to damages, including attorneys' fees, for each day the cargo remained seized in the present amount of $125,000.00. *See generally Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) (recognizing maritime law claim for wrongful seizure or detention of property).

22. Xcoal's wrongful attachment gives rise to an *in personam* maritime claim in favor of Javelin for all damages caused by Xcoal's actions.

23. For this maritime wrongful seizure and attachment claim, Javelin therefore seeks security from Xcoal in the amount sued upon as set forth below.

## RULE B ATTACHMENT

24. Javelin re-alleges and re-avers each of the allegations contained in Paragraph 1 through 23, as if set forth herein *in extenso*.

25. Javelin files this maritime attachment for the purposes of obtaining security, including attorneys' fees and/or other fees and/or costs associated with its claims filed in the

Wrongful Attachment Proceeding, in connection with Javelin's cognizable maritime claim against Xcoal, as set forth above.

26. Xcoal has no registered office in the State of Texas and, upon information and belief, does not conduct business within the jurisdiction of this Honorable Court or this District.

27. Upon information and belief, Xcoal presently has or will hold certain accounts, funds, monies, and deposits with Garnishee, PNC. PNC has 15 branch locations within the jurisdiction of this Honorable Court. Moreover, upon information and belief, the accounts, funds, monies, and deposits held by PNC are available to Xcoal in this jurisdiction and Xcoal may withdraw those funds from any branch location in this jurisdiction.

28. Upon information and belief, and after investigation, Xcoal, as identified in this action, cannot be "found" within this District for purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Xcoal has, or will have during the pendency of action, property or assets within this District, namely accounts, funds, monies, and deposits held by Garnishee, PNC and available to be withdrawn by Xcoal, which constitute property under Rule B.

29. Xcoal is justly indebted to Javelin for the damages as aforesaid and as to be shown more particularly at trial.

30. Javelin requests that this Honorable Court issue a writ of attachment and garnishment pursuant to Supplemental Rule B to secure the aforesaid claims against Xcoal, in an amount equal to the amount sued upon, or **$594,935.68**.

31. Javelin reserves its right to amend any article of this Verified Complaint as facts become better known.

32. Pursuant to the Local Rules of this Honorable Court, Javelin agrees to hold harmless and indemnify the U.S. Marshal and all of his deputies from any and all liability as a result of seizing the aforesaid property.

33. Further, based on the failure to pay the aforementioned sums owed and continuing, Javelin is entitled to judgment against the garnished funds in the amount of its claims, plus interest, costs and attorney's fees.

**WHEREFORE**, Plaintiff, Javelin Global Commodities (UK) Ltd., prays:

1. That this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching the accounts, funds, monies, and deposits currently held by Garnishee, PNC Bank N.A. and found in this district in an amount sufficient to answer Javelin's claim in accordance with Rule B, or up to $594,935.68, and that all persons claiming any interest in same be cited to appear and, pursuant to the Federal Rules of Civil Procedure, answer the matters alleged in this Verified Complaint;

2. That judgment be entered in favor of Javelin Global Commodities (UK) Ltd. for the amount of its claim as shown at trial, together with interest and costs, and that a decree of condemnation be issued against the property and credits of Xcoal Energy & Resources, including accounts, deposits, and funds presently held by PNC Bank N.A. and found in this District for the amount of Javelin's claim, together with interest, costs, and attorneys' fees.

3. That this Court award Javelin such other and further relief that this Court deems just and proper.

Dated: July 16, 2025.

                Respectfully submitted,

                */s/ Amy K. Anderson*
                Amy K. Anderson
                Texas Bar No. 24077064
                JONES WALKER, LLP
                811 Main Street, Suite 2900
                Houston, Texas 77002
                Telephone: (713) 437.1800
                Facsimile: (713) 437.1810
                aanderson@joneswalker.com

                ***Attorneys for Plaintiff, Javelin Global Commodities (UK) Ltd.***